NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

—————————————————————
                                                    :
ERIC DESHAWN GULLEY,                                :
                                                    :
              Plaintiff,                            :
       v.                                           :       CIVIL ACTION NO. 04-4445 (JLL)
                                                    :
ELIZABETH CITY POLICE DEPT.,                        :
ET AL.,                                             :       **OPINION**
              Defendants.                           :
—————————————————————:

**LINARES**, District Judge.

       Plaintiff, Eric Deshawn Gulley, filed a lawsuit alleging violations of 42 U.S.C. § 1983

against Defendants the Elizabeth City Police Department (the "Police Department"), Officer

David Turner, Officer Kenneth McNab, Officer Franklin Idrovo, Officer Donoto DeMarco,

Officer Marcos Diaz, Officer Victor Matos, Officer Richard Steinke, Officer Barbara Salvero,

Sergeant James Kearns, Sergeant (now Lieutenant) William McCue, Officer Alfredo Beltran,

Officer Howard Decker, Officer Paul Camarinha, Officer Anthony Fazio, and Officer Michael

Niewinski.

       Currently before the Court are motions for summary judgment pursuant to Fed. R. Civ. P.

56 filed by all Defendants.   Plaintiff has not filed an opposition to these motions.[1]  For the

_____

       [1]  Plaintiff has failed to respond to Defendants' motions for summary judgment, which
have now been pending for approximately six months.  All such motions were electronically
filed.  A review of the motion papers indicates that Defendants Matos, Turner, McNab,
DeMarco, Diaz, Idrovo, Steinke, and the Police Department all filed certificates of service
indicating that Plaintiff was served at the address he submitted to the Court.  Although
Defendants Beltran, Decker, Camarinha, Fazio, and Niewinski mailed their motion to "Belmont"
instead of "Delmont," where Plaintiff is incarcerated, these defendants submitted a return receipt

following reasons, the Court denies the motions for summary judgment filed by defendants

DeMarco, Matos, Diaz, and Steinke and grants the motions for summary judgment filed by the

other defendants.[2]

**I.     <u>Factual History</u>**[3]

On May 7, 2003, Plaintiff was arrested and charged with numerous offenses, including

carjacking, attempted murder, robbery, kidnapping, assault, possession of a weapon, eluding

police, and resisting arrest.[4]  He ultimately pled guilty to possessing a weapon and eluding police

and is currently serving a term of imprisonment on these charges.  <u>See</u> Plaintiff's Deposition at

16:12 - 17:1.  Plaintiff's section 1983 claims stem from incidents surrounding his arrest.

Plaintiff stole a 1963 Chevrolet Impala at approximately 3:30 a.m. on May 7, 2003.  <u>See</u>

<u>id.</u> at 21:14 - 23:12.  He claims that the car was left unlocked and the keys were in the car.  <u>See</u>

---

card indicating that their motion, which was addressed to the proper zip code, was delivered. The attorneys for Defendants Kearns and Salvero, who made the same error, represented that their mailings to "Belmont" were not returned as undeliverable.  Furthermore, the attorney for Defendant McCue submitted a certification to the Court indicating that he mailed a copy of the motion to Plaintiff.

[2]  Jurisdiction is premised on 28 U.S.C. § 1331.  The Court decides the instant motions without oral argument.  Fed. R. Civ. P. 78.

[3]  This factual history is derived from the parties' submissions, including Plaintiff's deposition testimony from April 19, 2006 as submitted by Defendants; the certifications of Sergeant McCue and Officers Matos, Diaz, Steinke and Turner; the affidavits of Sergeant Kearns and Officer Salvero; the various L. Civ. R. 56.1 statements submitted by the Defendants; and the May 7, 2003 police report.  To the extent that any facts are in dispute, such are viewed in the light most favorable to Plaintiff, the non-movant.  <u>See, e.g.</u>, <u>Mellott v. Heemer</u>, 161 F.3d 117, 120 n.2 (3d Cir. 1998).

[4]  Plaintiff has a long criminal record which includes convictions for criminal sexual contact, drug possession, and distribution of drugs within a school zone.  <u>See</u> New Jersey Criminal History Detailed Record, Eric Deshawn Gulley (June 2, 2005); Plaintiff's Deposition at 14:1 - 16:9.

id. at 85:23-25.  Plaintiff admits to stealing the car because he did not want to walk from Elizabeth to Newark and stealing the car was the "most logical thing" to do.  See id. at 76:1-11. He then began driving towards Newark on Route 1&9.  See id. at 23:20 - 24:8.

The Police Department received a report of a carjacking on the corner of Henry and Flora Streets in Elizabeth at approximately 3:44 am on May 7, 2003.  Officers Turner and McNab were dispatched to the scene.  When they arrived, Eric Melvin reported that he and his girlfriend, Asiania DeMarco,[5] had been carjacked at gunpoint.  The assailant drove off in his 1963 Chevy Impala toward Route 1&9 with Ms. DeMarco still inside.  There apparently was a second assailant involved in the carjacking, who drove off in a Nissan 300zx.  At some point, Ms. DeMarco escaped from the moving vehicle.  Both victims later identified Plaintiff as the assailant.  Plaintiff disputes Melvin's version of the events and only admits to stealing the Impala.

Officers Turner and McNab drove towards Route 1&9.  Several other police units were dispatched to locate the Impala.  Officers Turner and McNab spotted the Impala on Route 1&9 and pulled up behind the car.  Once Officers Turner and McNab were behind the Impala, the vehicles made contact several times.  Although Plaintiff claims in his deposition that the police rammed his car from behind, see id. at 23:24 - 26:5, he admits during his plea hearing that he made contact with two police vehicles.  See Plea Hearing (June 30, 2004) at 8:13-22.  Officers Idrovo, McDonough,[6] Matos and Diaz joined in the pursuit.

As Plaintiff drove on Route 1&9, the officers observed Plaintiff toss a silver metallic

---

[5]  Asiania DeMarco has no apparent relation to Officer DeMarco.

[6]  Officer McDonough's first name is unknown. He is not named as a defendant.

3

object out the window.  Officers later recovered a .45 caliber handgun with its serial number defaced and several rounds of ammunition at this spot.  Although Plaintiff denied in his deposition that he had a gun on the night in question, see Plaintiff's Deposition at 20:19 - 21:11, he admitted to having a gun during his plea hearing, see Plea Hearing (June 30, 2004) at 9:2-16.

Plaintiff ultimately crashed the Impala into a concrete retaining wall on Route 1&9.  See Plaintiff's Deposition at 26:7-22.  Plaintiff admits he was not wearing a seatbelt.  See id. at 86:3-5.  He got out of the car and ran into a wooded area off the highway.  Plaintiff admits that he ran because he was out on parole.  See id. at 26:23 - 27:22.  He violated parole on May 7, 2003, because he did not report to the requisite halfway house and stole a car.  See id. at 17:2 - 18:6, 56:24 - 57:3.  While running into the woods, Plaintiff climbed over a fence and fell when doing so.  See id. at 76:12 - 77:13.  He finally hid in a ditch in the dirt.  See id. at 27:23 - 29:21.  Although Plaintiff denies that he was wearing a bullet proof vest on the night in question, see id. at 30:5-7, police found a discarded bullet proof vest in the wooded area during the pursuit.

Officers Steinke and DeMarco arrived at the scene in response to calls for backup.  Sergeant Kearns also arrived at the scene.  Officers DeMarco, Steinke, Matos, Diaz and Decker, and Sergeant Kearns, chased Plaintiff on foot through the woods.  Each officer split up to effectuate the search.  At that time, Officers Turner and McNab were securing the scene at the collision.  It appears that Officers Salvero, Beltran, Camarinha, Idrovo, Fazio, and Niewinski were also involved in securing the scene of the crash.

Officer DeMarco, using his flashlight, discovered Plaintiff hiding in the dirt.  See id. at 29:12-17.  The next series of events are disputed.  Plaintiff claims that after Officer DeMarco located him, Officers DeMarco, Matos, Diaz, and Steinke jumped on him and began beating him

in the face and head.  See Plaintiff's Complaint at p. 7-9; Plaintiff's Deposition at 27:23 - 31:10,

67:1 - 69:15, 137:13-18.  He claims that Officer DeMarco hit him with his police-issued

blackjack, see Plaintiff's Complaint at 7-9; Plaintiff's Deposition at 67:4-22, 89:15-25; however,

he did not see the instrument he was hit with.  See Plaintiff's Deposition at 66:9 -22, 89:15-25.

Plaintiff asserts that he was not resisting arrest; however, he admits that the officers repeatedly

told him to "stop resisting."  See id. at 67:1 - 68:18.  According to Plaintiff, he was beaten for ten

minutes and received twenty to thirty blows to his head and face.  See id. at 87:23 - 88:24.

According to Officer DeMarco, when he located Plaintiff, he took out his firearm and

called for backup on his radio.  Plaintiff struck him in the neck and face, causing injury.  Officer

DeMarco struggled with Plaintiff to apprehend him.  Officer DeMarco may have hit Plaintiff

with his police radio during the struggle.  See Police Report (May 7, 2003) at p. 3.  Officers

Matos, Steinke, and Diaz responded to the scene.  When they arrived, the officers saw Plaintiff

striking Officer DeMarco.  See Matos Certification at ¶ 9; Diaz Certification at ¶ 3; Steinke

Certification at ¶ 9.  Officer Steinke in particular states that he saw Officer DeMarco struggle

with Plaintiff as he held onto his firearm and radio.  See Steinke Certification at ¶ 9.  Officers

Matos, Steinke, and Diaz helped Officer DeMarco subdue Plaintiff.  See Diaz Certification at ¶

4; Steinke Certification at ¶ 10.   The officers restrained Plaintiff to handcuff and arrest him, but

they claim that they did not strike or hit Plaintiff.  See Matos Certification at  ¶ 13; Diaz

Certification at ¶¶ 4-5; Steinke Certification at ¶ 10.[7]

---

[7]  Officer Matos claims that he did not touch Plaintiff and that, although he was present,
he was not involved in Plaintiff's arrest.  See Matos Certification at ¶ 10.  Officer Diaz states that
Officer Matos was involved in Plaintiff's arrest.  See Diaz Certification at ¶ 4; see also Police
Report (May 7, 2003) at p. 3 (indicating that Officer Matos was involved in subduing Plaintiff at
time of his arrest). Viewing this dispute in the light most favorable to Plaintiff, the Court

After Plaintiff was handcuffed and placed under arrest, Officers Fazio and Niewinski transported Plaintiff in their police car to the police station.  Plaintiff admits that he was not assaulted during this transport.  See id. at 34:13-23.[8]

Plaintiff arrived at the Elizabeth police station.  He was in custody at the police station for about sixteen to eighteen hours.  See id. at 48:23 - 49:3, 148:1-5.   Plaintiff does not allege that he was assaulted while at the police station.  However, Plaintiff claims that while at the police station, he asked a female sitting at the front desk if he could see a doctor.  See id. at 36:10-18. He claims he needed medical attention because his head hurt, he felt dizzy, he had some bumps and bruises, and he had a cut over his left eye.  See id. at 36:19 - 37:5.  Plaintiff's cut stopped bleeding and had "scabbed up" by this time.  See id. at 38:3-9.  Plaintiff asserts that this woman told him that an ambulance was on its way and he would see it shortly. See id. at 37:6-11, 83:1-3.

Subsequently, Plaintiff was transported to the Union County Jail.  He admits that he was not assaulted during his transport to the Union County Jail.  See id. at 35:13-25.  During intake, Plaintiff was examined by a physician and was asked about his headaches, cuts, and bruises.  See id. at 37:19 - 38:2, 118:1 - 119:10.  At that time, he did not complain about his bumps, scrapes, or the cut over his eye.  See id. at 118:25 - 119:10.  He claims he did not receive any further

─────────────────────

considers Officer Matos as having participated in Plaintiff's arrest.

[8] Plaintiff does claim that as he was being escorted out of the park towards the police cars, one officer kicked him in the leg.  See Plaintiff's Deposition at 33:14-25.  Plaintiff admits that he did not include this allegation in his complaint.  See id. at 52:22 - 53:18.  Accordingly, the Court will not consider such allegation.  See, e.g., Commw. of Pa. ex. rel Zimmerman v. PepsiCo., Inc., 836 F.2d 173, 181 (3d Cir. 1988).  Further, even if this Court considers this allegation, it must be dismissed because Plaintiff provides no evidence that this incident occurred.  He cannot identify the officer who purportedly kicked him or document any injury to his leg.  See Plaintiff's Deposition at 34:1-7, 41:15-21.

treatment for his injuries at that time.  See id. at 41:4-19.  There is no evidence he asked for such

further treatment.  Plaintiff did receive treatment at the jail in 2004.  See id. at 38:20 - 39:20. He

was examined, diagnosed with migraine headaches, and given Motrin and medicine for high

blood pressure.  See id. at 39:23 - 41:3.  Plaintiff admits to having some headaches prior to the

incident in question.  See id. at 153:19 - 154:5.

      Plaintiff claims that Defendants violated section 1983 in the following ways:

    (1)     DeMarco, Matos, Diaz, and Steinke assaulted him;

    (2)     Idrovo threatened him with a gun;

    (3)     Kearns, Beltran, Salvero, Decker, Camarinha, Fazio, and Niewinski failed to stop the assault on Plaintiff;

    (4)     Turner and McNab denied him medical treatment after the assault;

    (5)     McCue failed to advise Plaintiff as to how to file a complaint, failed to send him to a hospital, and covered up the incident; and

    (6)     the Police Department employed individuals who violated Plaintiff's rights and failed to properly train them.

See Plaintiff's Complaint (Sept. 15, 2004) at pp. 7-10.

      For relief, Plaintiff asks for compensation for his migraine headaches, which he claims

were caused by the assault.  He also seeks compensation for the pain he had to endure the night

he was arrested.  Defendants claim that Plaintiff has failed to establish that they violated his

rights pursuant to 42 U.S.C. § 1983 and that they are entitled to qualified immunity for their

conduct.

## II.    <u>Standard of Review</u>

      A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil

Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine, fact issue compels a trial. Id. at 324.

In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. See Celotex, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

Where the non-moving party fails to file an opposition to a motion for summary judgment, "summary judgment, if appropriate, shall be entered against the [non-moving] party." Fed. R. Civ. P. 56(e). The failure of the non-moving party to respond to the summary judgment motion is not itself sufficient to justify the entry of summary judgment. See, e.g., Williams v. Santiago, No. 04-5097, 2006 WL 2786846, at *2 (D.N.J. Sept. 26, 2006) ("Plaintiff's failure to oppose summary judgment does not necessarily entitle Defendants to judgment in their favor . . . ."). The Court must still determine whether the moving party met its burden of proving that it is entitled to summary judgment. See Macias v. United States, No. 05-1445, 2006 WL 1843111, at *1 n.1 (D.N.J. June 30, 2006).

III.     **Legal Principles**

Plaintiff claims that Defendants, while acting in their individual capacities, violated his rights pursuant to 42 U.S.C. § 1983.[9]   To establish section 1983 liability, a plaintiff must show " 'that the official acting under color of state law caused the deprivation of a federal right.' " Hafer v. Melo, 502 U.S. 21, 25 (1991) (quoting Kentucky v. Graham, 473 U.S. 159, 166 (1985)).[10]   This is because section 1983 itself is not a source of substantive rights, but provides a vehicle for vindicating the violation of rights created by the United States Constitution or federal law.  See Graham v. Connor, 490 U.S. 386, 393-94 (1989); Morse v. Lower Merion School Dist., 132 F.3d 902, 907 (3d Cir. 1997).  Plaintiff claims that certain defendants used excessive force against him in violation of the Fourth Amendment and others denied him medical treatment in violation of the Due Process Clause of the Fourteenth Amendment.

A.      **The Fourth Amendment**

1.      **Use of Excessive Force**

Plaintiff alleges that defendants Matos, Diaz, Steinke, DeMarco, and Idrovo violated his constitutional rights by subjecting him to excessive force during the course of his arrest.  These

---

[9]  Section 1983 states in relevant part: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ."  42 U.S.C. § 1983.

[10]  The "under color of state law" element of section 1983 is similar to the state action requirement of the Fourteenth Amendment in that it excludes merely private conduct from the parameters of section 1983.  See, e.g., Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999).  This element in not in dispute.

claims are properly analyzed under the Fourth Amendment.   The Fourth Amendment prohibits the government from subjecting an individual to "unreasonable searches and seizures."  U.S. Const. Amend. IV.  Where a plaintiff is claiming that an officer used excessive force during the course of an arrest, this claim is properly analyzed under the Fourth Amendment's "objective reasonableness" standard.  See, e.g., Graham, 490 U.S. at 394-95.

This inquiry requires a " 'careful balancing of nature and quality of the intrusion on an individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  See Graham, 490 U.S. at 396 (quotations omitted).  In making this inquiry, the Court must examine the totality of the circumstances involved in each case.  See id.  In particular, the Court considers "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight."  Id.; see also Rivas v. City of Passaic, 365 F.3d 181, 198 (3d Cir. 2004) (discussing these factors).  The Third Circuit has set forth the following additional factors for consideration:  the possibility that the individual is violent or dangerous; the duration of the action; whether the action takes place during the course of an arrest; the possibility that the individual is armed; and the number of persons that police must control at one time.  See Rivas, 365 F.3d at 198 (citing Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)).

Furthermore, in conducting this analysis, courts must be mindful that police officers are often required to make split-second judgments in tense and uncertain circumstances.  See, e.g., Graham, 490 U.S. at 396-97.  Thus, the Court must evaluate whether the use of force was reasonable by considering the conduct of the officer from an on-scene perspective, including the information available to the officer at the time force was applied.  See id. at 396; see also Mellott

10

v. Heemer, 161 F.3d 117, 122 (3d Cir. 1998) (stating that reasonableness in excessive force inquiry is evaluated by considering the perspective of a reasonable officer on the scene).  " 'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers' . . . violates the Fourth Amendment."  Graham, 490 U.S. at 396 (internal quotation omitted).  The right to make an arrest necessarily carries with it the right to use some degree of force to effect that arrest.  See Graham, 490 U.S. at 396.

### 2. Failure to Stop the Use of Excessive Force

Plaintiff's section 1983 claims against defendants Kearns, Beltran, Salvero, Decker, Camarinha, Fazio, and Niewinski for failing to stop the use of excessive force against him rises to the level of a Fourth Amendment violation if excessive force was used and such defendants had a reasonable opportunity to prevent the use of excessive force.  See, e.g., Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002); Faust v. Clee, No. 03-1436, 2006 WL 3025960, at *5 (E.D. Pa. Oct. 23, 2006) ("A plaintiff can sustain an excessive force claim against an officer who did not participate directly in her arrest if the officer failed to intervene to prevent the use of excessive force when there was a reasonable opportunity to do so.").

### B. The Due Process Clause

Plaintiff claims that defendants Turner, McNab, and McCue violated his constitutional rights by denying him medical treatment after the purported use of excessive force.  Since Plaintiff was a pretrial detainee at the time of the alleged denial of medical treatment, his claims against these defendants are properly analyzed under the Due Process Clause of the Fourteenth Amendment.  See, e.g., Natale v. Camden County Correctional Facility, 318 F.3d 575, 581 (3d

Cir. 2003); <u>Faust</u>, 2006 WL 3025960, at *2-3 (analyzing plaintiff's claim of denial of medical treatment under the Fourteenth Amendment where plaintiff was allegedly denied treatment while a pretrial detainee).

The standard for determining whether a pretrial detainee was denied medical treatment is unclear.  Some case law within this circuit suggests that the standard is whether the conditions of the plaintiff's confinement amount to punishment prior to an adjudication of guilt.  <u>See</u> <u>Montgomery v. M.E. Ray</u>, 145 Fed. Appx. 738, 739-40 (3d Cir. Aug. 19, 2005). Other case law suggests that courts should examine whether the plaintiff had a serious medical need and the defendant was deliberately indifferent to such a need.  <u>See, e.g.</u>, <u>Natale</u>, 318 F.3d at 581-82; <u>Patterson v. Dean</u>, No. 06-3711, 2006 WL 2882492, at *3 (D.N.J. Oct. 6, 2006).[11]  The Court need not determine which standard is proper.  The parties have not briefed this issue.  Further, as discussed below, Plaintiff fails to provide any evidence that Officer Turner, Officer McNab, or Sergeant McCue denied him medical treatment under either formulation of this test.

## C.   Qualified Immunity

Defendants are entitled to qualified immunity from Plaintiff's section 1983 claims, and

---

[11]  This confusion seems to arise due to the language of the Third Circuit's decision in <u>Hubbard v. Taylor</u>, 399 F.3d 150 (3d Cir. 2005).  In <u>Hubbard</u>, the court held that section 1983 claims of pretrial detainees challenging their confinement are evaluated by determining whether the conditions amount to punishment before the adjudication of guilt.  <u>See Hubbard</u>, 399 F.3d at 158, 164-67.  It is unclear whether this holding applies only to non-medical confinement claims, as was at issue in <u>Hubbard</u>, or whether it also applies to claims of denial of medical treatment. <u>Compare Hubbard</u>, 399 F.3d at 166 n.22 (indicating that a pretrial detainee's claim of improper medical treatment are analyzed under the Eighth Amendment's deliberate indifference standard) <u>with</u> <u>Montgomery v. M.E. Ray</u>, 145 Fed. Appx. 738, 739-40 (3d Cir. Aug. 19, 2005) (stating that the proper standard for claims that a pretrial detainee was denied medical care is whether such amounted to punishment prior to an adjudication of guilt).

are thus, shielded from suit, under certain circumstances.  See, e.g., Saucier v. Katz, 533 U.S. 194, 200-01 (2001); Wright v. City of Philadelphia, 409 F.3d 595, 599 (3d Cir. 2005).  The threshold inquiry is whether, viewing the facts in the light most favorable to the Plaintiff, the facts alleged show that Defendants' conduct violated a constitutional right.  See, e.g., Saucier, 533 U.S. at 201; Wright, 409 F.3d at 600.[12]  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  See Saucier, 533 U.S. at 201.   However, if a favorable view of the Plaintiff's submissions reveals the violation of constitutional right, the Court must determine whether such a right was clearly established.  See Saucier, 533 U.S. at 201; Wright, 409 F.3d at 600.  To be clearly established, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  See Saucier, 533 U.S. at 202.  If the

---

[12]  It is clear that as a threshold matter in adjudicating a section 1983 claim, a court must consider whether a constitutional violation occurred.  See Saucier v. Katz, 533 U.S. 194, 201 (2001).  However, it is unclear as to whether this Court's finding that certain defendants did not violate Plaintiff's constitutional rights should result in a dismissal of Plaintiff's claims based on his failure to establish a cause of action under section 1983 or based on qualified immunity.  See Wright v. City of Philadelphia, 409 F.3d 595, 600 (3d Cir. 2005).  The parties do not brief this issue.  The Third Circuit admittedly has been inconsistent on this issue.  See id.  However, the Third Circuit emphasized that "[a]s a practical matter, the outcome will be the same whether we conclude that the officers are immune from suit or instead, that the plaintiff has no cause of action."  Id.

Thus, although the Court dismisses Plaintiff's claims against defendants Idrovo, Kearns, Beltran, Decker, Camarinha, Fazio, Niewinski, Salvero, Turner, McNab, and McCue based on Plaintiff's failure to establish a section 1983 claim against the Defendants, see supra section IV.B, qualified immunity would also be applicable because when the disputed facts are viewed in the light most favorable to the Plaintiff, they fail to show that these defendants violated Plaintiff's constitutional rights.  The Court considers whether defendants DeMarco, Matos, Diaz, and Steinke are entitled to qualified immunity because when viewing the facts in the light most favorable to Plaintiff, a constitutional violation occurred.  See supra section IV.A.

Defendants violated such clearly established constitutional or statutory rights, they are not

entitled to qualified immunity for their actions.  See, e.g., Wright, 409 F.3d at 599-600.

**D.      Municipal Liability**

Plaintiff claims that the Police Department is subject to liability for the individual

defendants' constitutional violations based on its failure to properly train its officers. Municipal

bodies, such as the Police Department, may only be held liable under section 1983 in limited

circumstances.  The Police Department may not be held liable under section 1983 under a theory

of respondeat superior.  See, e.g., Monell v. Dep't of Social Services of the City of New York,

436 U.S. 658, 690-91 (1978); Brennan v. Norton, 350 F.3d 399, 427 (3d Cir. 2003).  Thus, the

Police Department cannot be held liable for merely employing an individual who commits a

constitutional violation.

Instead, the Police Department will be subject to section 1983 liability where its policy or

custom caused Plaintiff's constitutional deprivations, see, e.g., Monell, 436 U.S. at 694; Brennan,

350 F.3d at 427, or where the failure to adequately train its employees evidences a deliberate

indifference to the rights of others, see, e.g., City of Canton, Ohio v. Harris, 489 U.S. 378, 387-

89 (1989).  See, e.g., Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997) ("in the

absence of an unconstitutional policy, a municipality's failure to properly train its employees and

officers can create an actionable violation of a party's constitutional rights under § 1983").  In

essence, the municipal body must be the "moving force" behind the constitutional injury to the

plaintiff.  See, e.g., City of Canton, 489 U.S. at 389 (stating that municipalities can only be held

liable under section 1983 where its policies are the "moving force" behind the constitutional

14

violation (citations omitted)).

**IV.**     <u>**Legal Discussion**</u>

**A.**      **DeMarco, Matos, Diaz, and Steinke**

Plaintiff claims that Officer DeMarco used excessive force against him during his arrest by beating him on his hands and face with his police-issued blackjack.  He further claims that defendants Matos, Diaz, and Steinke beat him in the head and face and stomped on him while he was lying on the ground.  These defendants ask the Court to grant summary judgment in their favor because Plaintiff cannot identify these officers as his assailants.  <u>See</u> Plaintiff's Deposition at 44:8 - 45:21, 54:3 - 55:24, 84:3 - 85:14, 89:3-14, 98:18 - 99:17, 134:18 - 135:13, 136:12-14, 137:19-22, 155:23 - 156:8, 159:1-3.  Plaintiff named these officers as his assailants because the police report listed these officers as being present during his arrest.  <u>See id.</u> at 135:14 - 136:17; Police Report (May 7, 2003) at p. 3.[13]  Defendants further argue that Plaintiff's injuries do not match up with the use of force he describes and, given the circumstances and Plaintiff's resisting arrest, any use of force was reasonable.

Defendants DeMarco, Matos, Diaz, and Steinke all admit that they were present during Plaintiff's arrest and the record reflects that they assisted in arresting Plaintiff.  <u>See</u> Diaz Affidavit at ¶¶ 2-4; Steinke Certification at ¶¶ 7-13; Matos Certification at ¶¶ 7-9.  Viewing the facts in the light most favorable to Plaintiff, he claims that after he was discovered lying face

_____

[13]  Interestingly, throughout the course of his deposition, Plaintiff chooses to believe the section of the police report which lists the officers which were present during his arrest yet chooses to dispute most of the remaining information in the police report.  <u>See</u> Plaintiff's Deposition at 70:16 - 71:3.

down in the dirt, he was unjustifiably beaten about twenty to thirty times for ten minutes by four officers while unarmed.  He states that he was not resisting arrest.  Although Plaintiff cannot identify Officers DeMarco, Diaz, Steinke, and Matos as the officers who assaulted him, a reasonable jury could conclude that since the evidence, including affidavits and the police report, places these individuals at the scene of the assault, they were responsible for the use of excessive force.  See Smith v. Mensinger, 293 F.3d 641, 650 (3d Cir. 2002) (holding that a classic factual dispute preventing summary judgment arose where although plaintiff could not identify the officers who participated in the use of excessive force against him, the police officer defendants were undisputably in the vicinity at the time of the assault).

Defendants also point out the *de minimis* nature of Plaintiff's injuries and the discrepancy between the minor injuries Plaintiff admittedly suffered, see Plaintiff's Deposition at 36:25 - 38:9, and the egregious assault described by Plaintiff in his deposition, see id. at 87:23 - 88:24.  Plaintiff's injuries—bumps, bruises, a cut above his eye, and headaches—are minor; however, the Third Circuit has made clear that when conducting an excessive force inquiry, the focus is on the extent of the force applied and thus, a *de minimis* injury may still result in a constitutional violation if more than *de minimis* force is used.  See, e.g., Smith, 293 F.3d at 649.  Thus, the Court cannot dismiss Plaintiff's claims against these defendants due to the minor nature of his physical injuries.

The Court acknowledges the hurdle Plaintiff faces in establishing that his purported injuries were caused by these defendants, as opposed to being caused by his vehicle crash into a concrete divider while not wearing his seatbelt or escape through the woods, during which he admittedly scaled a fence and fell to the ground.  The Court also recognizes that Plaintiff has

presented no medical evidence that migraine headaches can be caused by head trauma, let alone that his migraine headaches were caused by this purported assault.  However, as an inmate appearing pro se, Plaintiff is in a difficult position from which to provide record evidence to establish causation in this regard and thus, the Court will not dismiss Plaintiff's claims against these defendants on this ground at this time.  See Smith, 293 F.3d at 649 n.4 (stating that it is difficult for a pro se inmate to generate record evidence in support of his claims and thus, his affidavits are " 'about the best that can be expected from him [at the summary judgment phase of] the proceedings' " (quotation omitted)).

Furthermore, despite Defendants' contentions, the Court cannot conclude, as a matter of law, that the use of force was objectively reasonable.  If Plaintiff's account is correct, he was merely lying on the ground, not resisting arrest, when he was beaten multiple times on his face and head.  At that time, he was unarmed.  It is not for this Court to determine, at this juncture, whether the totality of the circumstances of this matter, including Plaintiff's purported participation in a violent crime, flight from police, and admission that he was armed on the night in question, justify the use of force against him during his arrest.  This is not to say that the Court finds Plaintiff's account credible.  Plaintiff's injuries do not support his description of an egregious application of excessive force involving multiple stomps and hits to his face and head.  However, in adjudicating a motion for summary judgment, the Court is not at liberty to make such credibility determinations.  See, e.g., Mest v. Cabot Corp., 449 F.3d 502, 514 (3d Cir. 2006); Vasquez v. City of Jersey City, No. 03-5369, 2006 WL 1098171, at *4 (D.N.J. Mar. 31, 2006).

Given the foregoing determination, the Court must consider, in evaluating the

17

applicability of qualified immunity, whether Plaintiff's right to be free from the use of excessive force under such circumstances is clearly established. The court holds that such right is clearly established because a reasonable officer would understand that beating an unarmed suspect, multiple times on the face and head while he is lying down and not resisting arrest constitutes excessive force. See, e.g., Saucier, 533 U.S. at 201 (indicating that it is clearly established that the use of force greater than objectively reasonable violates the Fourth Amendment); Vasquez, 2006 WL 1098171, at *4-5 (holding that it is clearly established that an unprovoked beating of an individual violates the Fourth Amendment). Therefore, Defendants DeMarco, Matos, Diaz, and Steinke are not entitled to qualified immunity. The Court denies their motions for summary judgment.

**B.     Idrovo, Kearns, Beltran, Decker, Camarinha, Fazio, Niewinski, Salvero, Turner, McNab, and McCue**

      **1.     Officer Idrovo**

Plaintiff alleges that Officer Idrovo "threatened [his] life with the blunt use of his weapon, gun, by saying that he should have shot me." Plaintiff's Complaint (Sept. 15, 2004) at p. 7. Plaintiff provides no support for this bald assertion and asks the Court to speculate as to when, where, and how this alleged threat took place. Plaintiff does not allege that Officer Idrovo was present when he was arrested and allegedly assaulted. In fact, it is undisputed that Officer Idrovo was only involved in the pursuit of Plaintiff while he was driving the stolen Impala, not the subsequent foot pursuit and arrest. See Plaintiff's Deposition 57:21-58:6; Police Report (May 7, 2003) at pp. 2-3. Plaintiff does not allege that his constitutional rights were violated during the vehicle pursuit. Accordingly, the Court grants summary judgment in favor of Officer

18

Idrovo on Plaintiff's section 1983 claim against him.

> **2.   Sergeant Kearns and Officers Beltran, Decker, Camarinha, Fazio, and Niewinski**

Plaintiff asserts that Sergeant Kearns, Officer Beltran, Officer Decker, Officer Camarinha, Officer Fazio, and Officer Niewinski were present when he was arrested and allegedly assaulted and failed to stop such assault.  Plaintiff admits that he cannot identify any of the officers which were at the scene of his arrest.  See Plaintiff's Deposition at 70:16-22, 98:18 - 99:17.  He listed these individuals as defendants because they were mentioned in the police report of the incidents of May 7, 2003.  See, e.g., id. at 98:25 - 99:17; Police Report (May 7, 2003) at pp. 2-3.  However, the police report, which Plaintiff uses to place these defendants as the scene of his arrest, plainly indicates that these officers were not present when Plaintiff was arrested.  See Police Report (May 7, 2003) at pp. 2-3.

According to the police report, Sergeant Kearns was involved in the foot pursuit of Plaintiff through the woods as he tried to escape.  See id. at p. 2.  Sergeant Kearns admits to being involved in this chase.  See Kearns Affidavit at ¶ 5-6.  The report further indicates that Officers Beltran, Decker, Camarinha, Fazio, and Niewinski were involved in securing the scene where Plaintiff crashed and exited the Impala and thus, were not involved in the foot pursuit and subsequent arrest.  See id. at pp. 2-3.  None of these defendants are listed as being present at the scene of Plaintiff's arrest.  See id.  Thus, Plaintiff's gross speculation that these individuals were present during the purported assault is refuted by the very document he relies on.  Accordingly, Plaintiff fails to establish a genuine issue of material fact that these defendants had a reasonable opportunity to stop the use of excessive force against him.

Additionally, the police report reveals that Officers Fazio and Niewinski transported Plaintiff to the police station after he was arrested.  See id. at p. 3.  Plaintiff admits that Officers Fazio and Niewinski only transported him to the police station and he was not assaulted during transport.  See Plaintiff's Deposition at 163:20 - 164:2.  Thus, Plaintiff's section 1983 claims against Officers Fazio and Niewinski fail for this added reason.

Accordingly, the Court grants summary judgment in favor of defendants Sergeant Kearns and Officers Beltran, Decker, Camarinha, Fazio and Niewinski on Plaintiff's section 1983 claims.

### 3.    Officer Salvero

Plaintiff alleges that Officer Salvero violated his constitutional rights because she was present at his arrest and purported assault and failed to stop the use of excessive force against him.  Officer Salvero is female.  See Salvero Affidavit at ¶ 2.  Plaintiff admits that no female police officers were involved in his arrest or present at the scene of his arrest.  See Plaintiff's Deposition at 156:13-15.  Further, Plaintiff admits that he cannot identify Officer Salvero.  See id. at 79:21 - 80:2.

The only female officer Plaintiff discusses in his complaint and at his deposition is the officer who was purportedly sitting at the front desk at the police station when he requested medical treatment.  Plaintiff does not allege that this individual is Officer Salvero or identify her as Officer Salvero.  Officer Salvero was not present at the police station at that time.  She was on duty in her patrol car.  See Salvero Affidavit at ¶¶ 8-10.

Thus, the Court grants summary judgment in favor of Officer Salvero on Plaintiff's section 1983 claim.

4.        **Officers Turner and McNab**

Plaintiff claims that Defendants Turner and McNab violated his constitutional rights by denying him medical treatment.[14]  This claim must be dismissed.  Plaintiff admits that he only named these individuals as defendants because Officers Turner and McNab prepared the police report.  See Plaintiff's Deposition at 105:14 - 109:21; see also Police Report (May 7, 2003) at p. 1.  Plaintiff fails to provide any authority supporting such a claim on these grounds.  Plaintiff did not ask Officers Turner or McNab for medical treatment.  See Plaintiff's Deposition at 104:4-6, 105:19-21, 112:5 - 113:10, 114:14-24, Turner Certification at ¶ 7.  Plaintiff cannot identify Officer McNab and admits that he never had a conversation with him.  See Plaintiff's Deposition at 101:16-19, 103:22 - 104:3.  Although Plaintiff spoke with Officer Turner at the police station, as indicated above, he admits that he did not ask him for medical treatment.  See id. at 113:2-10; see also Turner Certification at ¶¶ 6-7.  There is no indication that his injuries, a cut over his eye that had scabbed up and some bumps and bruises, were so serious that Officer Turner should have known that Plaintiff needed urgent medical attention.  Officer Turner states, and Plaintiff does not dispute, that when he spoke with Plaintiff at the police station, he appeared coherent and did not complain of injuries.  See Turner Certification at ¶¶ 6-12.

Further, Plaintiff admits that he was examined by a physician after he was transferred from the police station to the Union County Jail.  See id. at 118:1-17.  He was asked about his headaches, cuts, and bruises.  See id. at 37:20 - 38:2.  Plaintiff admits that at that time, he did not complain to the doctor about his headaches, the cut over his eye, or his bumps and bruises.  See

---

[14]    It is undisputed that these defendants were not present during Plaintiff's arrest.  See Plaintiff's Deposition at 100:13 - 101:7; Turner Certification at ¶ 5.

id. at 118:25 - 119:10, 120:1-24.  Plaintiff fails to provide any evidence that his injuries

warranted more substantial medical attention.

　　　　Therefore, given the foregoing, Officers Turner and McNab did not violate Plaintiff's due

process rights.  The Court grants summary judgment in favor of Officers Turner and McNab on

Plaintiff's section 1983 claims against them.

　　　　**5.**　　　**Sergeant McCue**

　　　　Plaintiff claims that Sergeant McCue violated his constitutional rights by denying him

medical treatment, failing to advise him of the procedure to file a complaint, and covering up the

other officers' use of excessive force.  Admittedly, Plaintiff named Sergeant McCue as a

defendant in this matter because he was listed as the supervising officer in the police report.  See

Plaintiff's Deposition at 138:10 - 140:1; see also Police Report (May 7, 2003) at p. 5; McCue

Certification at ¶ 3.  Plaintiff has no personal knowledge that Sergeant McCue violated his

constitutional rights.  See Plaintiff's Deposition at 138:10 - 140:1.

　　　　Plaintiff's Eighth Amendment claims against Sergeant McCue fails for the same reasons

as discussed above with respect to Officers Turner and McNab.  Plaintiff admits that he never

asked Sergeant McCue for medical treatment.  See Plaintiff's Deposition at 140:22 - 141:3.

Further, there is no evidence that Plaintiff, who admittedly had only cuts and bruises, was in need

of more substantial treatment than that which he received at the Union County Jail.  See id. at

118:25 - 119:10, 120:1-24.  To the extent that Plaintiff was in need of such medical treatment,

Plaintiff admits that he has never seen or spoken to Sergeant McCue.  See id. at 138:10-19. Thus,

Sergeant McCue could not have known that Plaintiff was in need of medical attention.

　　　　Plaintiff's remaining claims against Sergeant McCue also fail.  Plaintiff admits that he

has never seen or spoken to Sergeant McCue, see id. at 138:10-19, 140:22 - 141:3, and that he never told Sergeant McCue that he wanted to file a complaint, see id. at 140:22-24.  There is no evidence that Sergeant McCue should have otherwise known of Plaintiff's purported desire to file a complaint.  Thus, Sergeant McCue is not subject to any liability on these grounds.  Further, with respect to the purported cover-up, Plaintiff provides no evidence to support his bald assertion that Sergeant McCue, who was not present at the scene of Plaintiff's arrest, see McCue Certification at ¶ 6-11, knew of any use of excessive force and covered such up.  Thus, Plaintiff's claims against Sergeant McCue on these grounds also are dismissed.

**C.     The Police Department**

Plaintiff claims that the Police Department is liable for the officers' constitutional violations because it failed to properly train the officers named as individual defendants. Plaintiff's claim against the Police Department is in essence a respondeat superior claim which cannot form the basis for section 1983 liability.  Plaintiff fails to (1) establish that the Police Department knew of and was deliberately indifferent to any training deficiency, (2) identify examples of specific training that the Police Department failed to provide, and (3) establish that the Police Department's deficiencies caused Plaintiff's injuries.  See, e.g., Reitz, 125 F.3d at 145 ("A plaintiff pressing a § 1983 claim must identify a failure to provide specific training that has a causal nexus with their injuries and must demonstrate that the absence of that specific training can reasonably be said to reflect a deliberate indifference to whether the alleged constitutional deprivations occurred."); Vasquez v. City of Jersey City, No. 03-5369, 2006 WL 1098171, at *7 (D.N.J. Mar. 31, 2006) (finding that city was not liable under section 1983 for failing to train its employees where plaintiff failed to show that city knew of purported training deficiency);

Bradshaw v. Twp. of Middletown, 296 F. Supp. 2d 526, 549 (D.N.J. 2003), aff'd 145 Fed. Appx.

763, 768 (affirming district court's dismissal of section 1983 claim against township for failure

to train where plaintiff "failed to identify any examples of specific training that the township

failed to provide").  Thus, Plaintiff's claims against the Police Department are dismissed.

### III.    Conclusion

In conclusion, the Court grants summary judgment in favor of defendants Idrovo, Kearns,

Beltran, Decker, Camarinha, Fazio, Niewinski, Salvero, Turner, McNab, McCue, and the Police

Department on Plaintiff's section 1983 claims against them.  The Court denies the motions for

summary judgment filed by defendants DeMarco, Matos, Diaz, and Steinke.  An appropriate

order accompanies this opinion.

Date:   December 12, 2006                                        /s/ Jose L. Linares
                                                                United States District Judge